UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                    )
EDWARD F. GRODEN,                   )
  Executive Director of the New     )
  England Teamsters and Trucking    )
  Industry Pension Fund, and        )
                                    )          CIVIL ACTION
CAROL BLANCHARD,                    )          No. 21-10208-WGY
  Executive Director of the         )
  Teamsters Union 25 Health Services)
  and Insurance Plan,               )
                                    )
                    Plaintiffs,     )
                                    )
            v.                      )
                                    )
C. CARNEY RECYCLING SOLUTIONS U,    )
LLC,                                )
                                    )
                    Defendant.      )
_____)
```

YOUNG, D.J.                                        March 23, 2023

**FINDINGS OF FACT, RULINGS OF LAW,
AND ORDER FOR JUDGMENT**

## I.   INTRODUCTION

This case involves workplace injuries covered by a
collective bargaining agreement ("CBA").  The injured employees
received appropriate benefits as a result of their injuries up
until the expiration date of the CBA.  The affected employees
also received termination notices on the expiration date of the
CBA.  The issue here is whether the right to the continuing
contributions necessary to pay injury benefits vested prior to
the expiration of the CBA.

[1]

The Executive Director of the New England Teamsters and Trucking Industry Pension Funds, Edward F. Groden ("Groden"), and the Executive Director of the Teamsters Union 25 Health Services & Insurance Plan, Carol Blanchard, (collectively "the Plaintiffs") filed their first complaint on February 5, 2021, against C. Carney Recycling Solutions U, LLC ("Carney"). Compl. ("Compl."), ECF No. 1. The Plaintiffs bring two counts arising both under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. section 1001, and section 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. section 185. Id. ¶ 1, 13-30. Count One is on behalf of the Teamsters' Health Plan. Id. Count Two is on behalf of the Teamsters' Pension Fund. Id. In both counts, the Plaintiffs allege that Carney was obligated to make such continuing contributions by the terms of one or more of its CBAs and the Declaration of Trust of both the Health Plan and the Pension Fund ("Article 14 and 15"). Id. ¶ 10.

Carney argues that the Plaintiffs (1) fail to state a claim under section 515 of ERISA for "post contract obligations," (2) fail to show any "legal duty established and provided by applicable labor-management relations law" following expiration of the CBAs, (3) fail to show that Carney entered into any explicit or implicit agreement which survived expiration of the CBA, and (4) that post-contract expiration contributions to the

funds would subject Carney to criminal penalties.  Def. Memo. Supp. Summ. J. 2-3, 11, 14, 19, ECF No. 28.

Carney filed a motion for summary judgement against the Plaintiffs.  Def. C. Carney Recycling Solutions U, LLC's Mot. Summ. J. Req. Oral Arg. ("Def. Summ. J."), ECF No. 27.  The Plaintiffs filed a cross motion for summary judgement against Carney.  Pl.'s Mot. Summ. J. ("Groden's Cross-Mot. Summ. J."), ECF No. 29.  The issues have been briefed.  See Pls.' Mem. Opp'n Mot. Summ. J. ("Groden's Opp'n C. Carney"), ECF No. 40, Def. C. Carney Recycling Solutions U, LLC's Opp'n Pls.' Mot. Summ. ("C. Carney's Opp'n C. Groden"), ECF No. 39.  The parties consented to proceed case stated.[1]  Electronic Notice Resetting Hearing on Motion 29, ECF No. 46.  This Court heard case stated oral arguments on September 22, 2022.  Electronic Clerk's Notes, ECF

---

[1] "Case stated hearings provide an efficacious procedural alternative to cross motions for summary judgment." Moitoso v. FMR LLC, 451 F. Supp. 3d 189, 198 (D. Mass. 2020). "In a case stated, the parties waive trial and present the case to the court on the undisputed facts in the pre-trial record." Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 10-11 (1st Cir. 2012) (internal quotation marks omitted). Although the case stated procedural device entitles the court to "engage in a certain amount of factfinding," id., "case stated hearings usually involve but a modicum [thereof] -- nothing more than the drawing of reasonable inferences," Moitoso, 451 F. Supp. at 199. Unlike at summary judgment, "the Court is relieved of drawing all inferences against each moving party, instead drawing such inferences as are reasonable to resolve the case.'" Bunch v. W.R. Grace & Co., 532 F. Supp. 2d 283, 287 (D. Mass. 2008)." Chiocca v. Town of Rockland, No. CV 19-10482-WGY, 2022 WL 4817094, at *16 (D. Mass. Oct. 3, 2022).

No. 48.  Both parties submitted supplemental memoranda of law on
September 29, 2022.  Mem. of Law by C. Carney Recycling
Solutions U, LLC to 48 Mot. Hr'g, ECF No. 49; Pls.'
Supplemental. Mem.  Supp. re 29 Mot. Summ. J., ECF No. 50. <u>See</u>
Def. Summ. J. 2-3.

## II.  FINDINGS OF FACT

According to the Parties' Agreed Statement of Facts
("Undisputed Facts") ¶ 1, ECF No. 31., Teamsters Local Union No.
25 of the International Brotherhood of Teamsters ("the Union")
and Carney entered into a CBA.  <u>Id.</u>  The relevant CBA began on
May 1, 2016, and expired on June 30, 2020.  <u>Id.</u>  Article 23 of
the CBA provided that it "shall continue thereafter year to year
unless notice is given in writing of a desire to change, modify,
or terminate the Agreement by either party to the other party
sixty (60) days or more prior to the expiration of such period."
<u>Id.</u> ¶ 3.  On April 5, 2020, the Union sent a letter to Carney
informing them of their intent to seek modifications to the soon
to expire CBA, request negotiations, and potentially strike if a
new agreement is not reached.  <u>Id.</u> ¶ 2.  On April 22, 2020,
Carney sent a letter to the Union "accept[ing] the April 5, 2020
letter as the Union's notice, pursuant to Article 23, that the
CBA would not automatically extend for one year and would end on
June 30, 2020."  <u>Id.</u> ¶ 4.  In the same letter, Carney gave their

[4]

notice as well of termination and non-extensions of the CBA. Id. ¶¶ 4-5. Carney explained they would "no longer have any driver employees which is the job classification that is now represented by the Union pursuant to Article 17 of the Agreement", as of June 30, 2022. Id. ¶ 6. Following Carney's April 22nd letter, the Union did not file any grievance or an unfair labor practice charge and did not request negotiations with Carney. Id. ¶ 8.

### A.   Carney's Notice of Termination of Employment

Mr. White and Mr. Smith were drivers employed by Carney. Undisputed Facts ¶ 11. Mr. White was injured on February 27, 2020, and Mr. Smith was injured on May 4, 2020. Id. In letters dated June 29, 2020, Mr. White and Mr. Smith, employees of Carney, were terminated effective June 30, 2020. Id. ¶¶ 9-10. Mr. White and Mr. Smith received workers' compensation benefits and settled their workers' compensation claims over a year later in October 2021. Id. ¶¶ 11-13. Mr. White and Mr. Smith were still unable to work by the CBA's expiration date due to their workplace injuries. Id. ¶¶ 11-12. Thereafter, Carney ended contributions to the Health Plan and Pension Fund for Mr. Smith and Mr. White. Id.

[5]

**B.   Payroll Audit by the Health Plan**

A little over two months after the CBA expired, the attorney for the Health Plan notified Carney of their delinquency in the contributions for the months of July, that contribution for August 2020 was due, and alleged breach of violation of the CBA and ERISA.   Undisputed Facts ¶ 14.   On September 21 and 22, 2020, the Union retained an accounting firm ("WLGA") to verify payments to the Health Plan for the period January 1, 2018, to September 30, 2020.   Id. ¶ 15.   WLGA performed an independent audit of Carney and found no variance in the examination period "1/1/2018-9/30/2020, Actual 1/1/18-6/30/2020."   Id. ¶ 17.   The examination summary produced by WLGA states that the examination period ran through September 30, 2020, but the WLGA also stated that the actual examination period ended on June 30, 2020, which is the date the CBA expired.   Id.   On October 7, 2020, the Health Plan notified Carney that no discrepancies were found, and "no additional contributions are owed."   Id. ¶ 20.   Two months later, on December 21, 2020, attorneys for the Health Plan demanded payment of contributions to the Health Plan for Mr. White and Mr. Smith from and after July 1, 2020.   Id. ¶ 21.

**C.   Payroll Audit by the Pension Fund**

On September 15, 2020, attorneys for the Pension Fund ("the Fund") sent Carney a letter alleging delinquent contributions

[6]

due on August 20, 2020, breach of the CBA, and threatening legal action.  Undisputed Facts ¶ 23.  An audit for 1/1/18-12/31/19 was conducted of Carney's payroll and it revealed underreported hours for Mr. Smith and Mr. White for July and August 2020.[2]  Id. ¶¶ 24-26.

## III. RULINGS OF LAW

The parties here did not explicitly provide what would happen to the rights of an employee who was injured on the job prior to expiration of the CBA.  Thus, it is this Court's responsibility to determine whether there was a vested obligation in the CBA owed to Mr. Smith and Mr. White even after its expiration.

The provisions at issue are excerpted below.
Article 14, PENSION, Section 14.02 ¶ 4 states:


If an employee is injured on the job, the Employer
shall continue to pay the required contributions at
the rate of forty (40) hours for each such week until
the employee returns to work; however, such
contributions of forty (40) hours shall not be paid
for a period of more than twelve (12) months.


Similarly, Article 15, HEALTH & WELFARE, Section (b) ¶
6 states: If an employee is injured on the job, the
Employer shall continue to pay the required
contributions at the rate of thirty-two (32) hours for
each such week until the employee returns to work;

---

[2] This may be a typographical error in the Undisputed Facts — the audit was done through 2019 but the Pension fund reports missing funds for August 2020.

however; such contributions of thirty-two (32) hours
shall not be paid for a period of more than twelve
(12) months. . . .

Id. 7-9.

Article I, Section 1.15, COVERED EMPLOYMENT, Section 1.19,

EMPLOYEE, and Section 2.08, TERMINATION OF PARTICIPATION, within

the Complete Rules and Regulations of the New England Teamsters

& Trucking Industry Pension Plan state:

1.15 COVERED EMPLOYMENT:. . . . "Covered Employment"
shall not, however, include employment by an employer
after termination of that employer's status as a
Contributing Employer for failure to pay contributions
due, pursuant to the provision of Section 2.08, or
employment as an Employee excluded by the provisions
of Section 1.19[.]


1.19 EMPLOYEE: (a) "Employee" means a person who is an
employee of an Employer and who is covered by a
Collective Bargaining Agreement requiring Employer
contributions on his behalf[.]


2.08 TERMINATION OF PARTICIPATION: A Contributing
Employer's participation in this Plan shall cease on
the earliest of the dates described in subsections
(a), (b), or (c) below. The termination of an
Employer's participation in this plan, whether by
action of the Trustees or otherwise, shall not relieve
the Employer of any outstanding obligations to the
Fund at the effective date of such termination.


(b) Contributions No Longer Required. A contributing
Employer's participation in this Fund with respect to
a bargaining unit will automatically cease when the
Employer no longer has a Collective Bargaining
Agreement requiring contributions to the Fund or with

that bargaining unit unless continuing contributions
are due as a result of a legal duty established and
provided by applicable labor management relations law,
including 29 U.S.C. §158(a)(5).

Undisputed Facts 16-17.

Likewise, Section B. (1) and (2) within the Teamsters Union

25 Health Services & Insurance Plan Agreement and Declaration of

Trust May 2008 (Ex. 13, SR 0050-0061) state:

> (1) The term "Employer" as used herein . . . shall
> mean an employer of labor in the general trucking
> industry and other Employers who employ Employees
> covered by contract with the Union . . . and has in
> force or who executes an agreement with the Union
> providing for such Employer's participation in this
> Trust and his adoption of this Declaration of Trust...

> (2) The term "Employee" as used herein shall mean an
> Employee of an Employer hereunder who shall be covered
> by a collective bargaining agreement between the
> Association and the Union or between an Employer and
> the Union.

Undisputed Facts 16-17.

## A.    The Proper Forum

Carney argues that any legal duty to make the contributions

here seeks to have this Court "address an unfair labor practice

allegation."  Def. Memo. Supp. Summ. J. 3.

The heart of Carney's argument is that the complaint's

allegations of a legal duty owed constitutes an allegation of an

unfair labor practice violation under 29 U.S.C. §158(a)(5) that

does not belong in this Court, but rather lies within the

exclusive jurisdiction of the National Labor Relations Board

[9]

("NLRB").  Def. Memo. Supp. Summ. J. 3.  Carney misunderstands the nature of this suit.  The Plaintiffs are not asserting an unfair labor practice violation, but rather a contract violation that fits squarely within this Court's jurisdiction pursuant to 29 U.S.C. § 1001 et seq. and 29 U.S.C. § 185.

Furthermore, the last clause of the CBA's 2.08 TERMINATION OF PARTICIPATION section uses the word "including."  Undisputed Facts 16-17.  The word "including" on its face means the CBA's clause is not limited to unfair labor practice disputes within the jurisdiction of the NLRB.  If Carney's limited interpretation of the clause were correct, it would run contrary to the plain intention of Congress in amending ERISA to hold employers more accountable.  See Laborers Health and Welfare Tr. Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 546 (1988).

The Ninth Circuit's decision in Advanced Lightweight interpreted Cement Masons Health & Welfare Tr. Fund for N. Cal. v. Kirkwood-Bly, Inc. and concluded that "an employer's duty to pay trust fund contributions after a collective agreement has expired derives entirely from section 8(a)(5) and that a section 301 suit to recover unpaid contributions between expiration and impasse was preempted."  Advanced Lightweight, 779 F.2d at 504 (9th Cir. 1985)(citing Cement Masons Health and Welfare Trust

[10]

Fund for Northern California v. Kirkwood-Bly, Inc., 520 F. Supp.
942 (N.D. Cal. 1985)(aff'd, 484 U.S. 539 (1988)).  Unlike
Kirkwood-Bly, the Plaintiffs here are only bringing a suit to
enforce the provisions of the CBA.  The Plaintiffs do not allege
any unfair labor practice within the subject of sections 7 or 8
of the NLRB because the employees were injured on the job and
thus have a vested right to the contributions.  Id.  Moreover,
Kirkwood-Bly is distinguishable from the present case because
the Plaintiffs seek not to recover unpaid contributions between
expiration and impasse; they sue to recover unpaid contributions
for employees injured on the job while the CBA was still in
effect.  See 520 F. Supp. 942 (N.D. Cal. 1985)(aff'd, 484 U.S.
539 (1988)); Compl. ¶ 21, 30, ECF. No. 1.

**B.    The CBA Establishes "Post Contract Obligations" under
        Section 515 of ERISA**

Section 515 permits multiemployer plans to collect
contributions from employers only if the plan can establish an
obligation to contribute under the terms of the plan's governing
documents or the CBA.  Board of Trustees, Sheet Metal Workers'
Nat. Pension Fund et al. v. Four-C-Aire, Inc., 929 F.3d 135 (4th
Cir. 2019).

In Carney's eyes, the obligation to contribute cannot be
established because the contributions could not have been "due"
on the fifteenth and twentieth of each month for the health and

[11]

pension plans respectively.   Ex. 13, (Health Plan) SR 0060; Ex.
14 (Pension Plan) SR 0072.   In essence, Carney argues that there
is no possible way the contributions could have become "due" on
the fifteenth and twentieth of each month because the specific
dates had not yet come up on the calendar since Mr. Smith and
Mr. White were no longer employed and the CBA had expired.
Undisputed Facts ¶ 12; Def. Supplemental Summ. J. Mem. 3.

While Carney's argument is seemingly strong on its face, a
closer look into what exactly would trigger the "due" date of
these payments leads this Court to determine that the
contributions could, in fact, be "due".   Merriam Webster defines
"due" as meaning something is "owed or owing as a debt".   *Due*,
Merriam Webster, https://www.merriam-webster.com/dictionary/due
(last visited Dec. 27, 2022).   Thus, it logically follows that
for something to be due, something must first be owed.   The
undisputed fact that Mr. Smith and Mr. White were injured on the
job created the obligation of up to 12 payments due to the
funds.   The actual date the money is paid into the accounts is
of no consequence in the face of the triggering obligation to
employees injured on the job.   Such payments, of course, cease
after 12 months or upon return to work.   Given that return to
work is foreclosed by Carney's terminating the employees, the
only obligation left under the injured on the job prong is to

[12]

run out the 12-month contributions due.  Undisputed Facts p. 7-
8.

    Carney goes on broadly to assert that "post-contract
contribution obligations cannot be enforced under Section 515 of
ERISA."  Def. Supplemental Summ. J. Mem. 4.  It cites Laborers
Health and Welfare Trust Fund for Northern California v.
Advanced Lightweight Concrete Co., 484 U.S. 539 (1988). Carney,
however, omits precisely the language in the Supreme Court's
holding that allows for post contract collections for "promised
contributions".  The full text of Advanced Lightweight
concerning section 515 states:

> [B]oth the text and the legislative history of §§ 515 and
> 502(g)(2) provide firm support for the Court of Appeals'
> conclusion that this remedy is limited to the collection
> of "promised contributions" and does not confer
> jurisdiction on district courts to determine whether an
> employer's unilateral decision to refuse to make
> postcontract contributions constitutes a violation of the
> NLRA."

Advanced Lightweight Concrete Co., 484 U.S. at 548-49,
(emphasis added).  Thus, this Court is tasked with
determining whether "promised contribution" can properly be
discerned in the language of the provisions at issue.

    Under Carney's theory, the "up to 12 months" Health and
Pension contributions for workers injured on the job following
the date of injury are not available because the obligation to
provide such contributions expired with the CBA and their

employment terminations on the same day -- June 30, 2020.  Def.
Summ. J. 2.  The Plaintiffs argue the 12-month obligation
outlives the agreement because Carney had a contractual duty and
legal obligation to pay contributions on behalf of employees on
workers' compensation.  Mem. Supp. Pls.' Mot. Summ. J. ("Pls.'
Memo in Supp") 5, ECF No. 30.

Carney relies heavily on Suburban Teamsters of Northern
Illinois Welfare and Pension Funds v. Moser, 867 F. Supp. 665
(N.D. Ill. 1994) (ruling that the plaintiff's claim was
"arbitrary and capricious" and there was no vested right to
contributions where, as here, the employee had been terminated).
The strongest similarity Carney points to between Moser and the
present case is that both CBA contracts had the same clause
providing for contributions for up to 12 months after a workers'
compensation injury.  Moser, 867 F. Supp. at 671; Def.
Supplemental Summ. J. Mem. 6.  Carney, however, fails to mention
the rather large differences between Moser and the case before
the Court.  The worker in Moser was terminated and then filed a
worker's compensation claim, seeking to remain covered by the
CBA. 867 F. Supp. at 667.  Unlike the employees Groden
represents here, the worker in Moser "was never absent 'because
of' occupational injury while he was employed by Moser."  Pls.'
Mem. Opp. Summ. J. 4 (citing Moser, F. Supp. at 667).
Furthermore, here Mr. Smith and Mr. White were employees "when

[14]

they were injured, they remained employees when they filed their workers' compensation claims, and they were employees when Carney made contributions on their behalf pursuant to the CBA for employees injured on the job." Pls.' Mem. Opp. Summ. J. 4.

Thus, this Court does not consider Moser persuasive here.

### C.   Legal Standard for Contractual Vesting under ERISA

The Plaintiffs allege their collectively bargained Health & Welfare Provision and their Pension Fund constitutes an employee welfare benefit plan under ERISA, §3 (1) and (3), 29 U.S.C., §1002(1) and (3). Compl. ¶¶ 4-6. The court in Kelly v. Honeywell Int'l, Inc., explained that "[a] plaintiff may bring a civil action under ERISA, 29 U.S.C. § 1132, '(A) to enjoin any act or practice which violates ... the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of ... the terms of the plan.'" 233 F. Supp. 3d 302, 309 (D. Conn 2017) (citing 29 U.S.C. § 1132(a)(3)).

Additionally, the Honeywell Int'l court explained that "[t]here are two types of employee benefit plans set forth under ERISA: pension plans and welfare benefit plans. Any pension and welfare benefits plan found within a collective-bargaining agreement is subject to the rules under ERISA. Id. at 309 (citing 29 U.S.C. § 1002(1)(defining "employee welfare benefit

[15]

plan" or "welfare benefit plan"), § 1002(2)(A) (defining both
"employee pension benefit plan" and "pension plan")).[3] "In sum,
the LMRA confers the right to sue in federal court to resolve a
dispute from a collective bargaining agreement, while ERISA
states the rights which a party may seek to enforce in that
suit." Id. at 309-10.

With the ERISA claim federal eligibility framework laid
out, the Court addresses Groden's ERISA claim for the alleged
Health and Pension benefits.  The court in Honeywell Int'l
explained that:

> ERISA treats pension plans and welfare benefits plans
> differently, specifically with respect to the vesting
> of such plans; ERISA explicitly exempts welfare
> benefits plans from minimum funding and vesting
> standards that govern pension plans. In general, ERISA
> does not create a 'substantive entitlement to
> employer-provided health benefits or any other kind of
> welfare benefits,' and therefore an employer may
> 'adopt, modify, or terminate welfare plans.'
> (quoting). An employee's right to ERISA-regulated
> welfare benefits does not vest unless and until the
> employer says they do. Where a plan unambiguously

---

[3] "In M & G Polymers USA, LLC v. Tackett, 574 U.S. 427
(2015), the United States Supreme Court issued a unanimous
decision clarifying how to properly interpret collective-
bargaining agreements. . . . The Court held that ordinary
principles of contract law must be applied to interpret the
CBA to the extent they are consistent with federal labor
policy." Honeywell Int'l, Inc., 233 F. Supp. 3d at 310.
(emphasis added).

[16]

indicates retiree benefits are vested the plan will be enforced.

Honeywell Int'l, Inc., 233 F. Supp. 3d at 309-10 (quoting Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 82 (2d Cir. 2001))(citing Tackett, 574 U.S. at 434; Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995); In re AMR Corp., 508 B.R. 296, 307 (Bankr. S.D.N.Y. 2014)); Abbruscato v. Empire Blue Cross and Blue Shield, 274 F.3d 90, 97 (2d Cir. 2001)).

Under ordinary contract principles explained below, this Court holds that the CBA unambiguously vested up to 12 months of contributions to both funds.

### 1. Ordinary Principles of Interpretation Govern

This Court relies on the following pertinent contract principles from Tackett as summarized in Honeywell Int'l to interpret the CBA:

> First, '[w]here the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.' A court may draw upon 'known customs or usages in a particular industry' to determine the meaning of the contract but can only do so if the parties provide evidentiary support thereof. Second, the Court acknowledged that welfare benefits generally are free to be adopted, modified, or terminated by the employer, but reminded lower courts that '[p]arties, however, can and do voluntarily agree to make retiree benefits a subject of mandatory collective bargaining.' Third, 'courts should not construe ambiguous writings to create lifetime promises.' Fourth and by like measure, the contractual obligation

ceases in the ordinary course when the CBA is
terminated, although '[t]hat principle does not
preclude the conclusion that the parties intended to
vest lifetime benefits for retirees.' The Court
expressly noted that a CBA can state 'in explicit
terms that certain benefits continue after the
agreement's expiration. But when a contract is silent
as to the duration of retiree benefits, a court may
not infer that the parties intended those benefits to
vest for life.'

Notably, Justice Ginsburg in her concurring opinion
added that in applying ordinary contract principles,
the intention of the parties, to be gathered from the
whole instrument, must prevail. Even after a CBA has
expired, a court may look at explicit terms or implied
terms of the expired agreement to place constraints on
the employer. Honeywell Int'l, 233 F. Supp. 3d at 310-
11. (citing Tackett, 574 U.S. 437-443; see also Litton
Fin. Printing Div., Div. of Litton Bus. Sys., Inc.,
501 U.S. 190, 203 (1991) (noting that one "source of
possible constraints upon the employer after the
expiration date of a collective-bargaining agreement"
is "from the express or implied terms of the expired
agreement itself"). For example, the existence of "a
provision stating that retirees 'will receive' health-
care benefits if they are 'receiving monthly pension'"
is relevant because retirees have an automatic vested
right to pensions under ERISA).

Honeywell Int'l, Inc., 233 F. Supp. 3d at 311 (emphasis
added).

Here, the CBA contains a provision stating that if

employees are injured on the job, they are entitled to health

and pension contributions until they can return to work only up

to a period of 12 months.  Undisputed Facts 7-8.  The "12

months" language is an express term of the expired agreement

that constrains the employer to its promise to contribute up to

the 12-month mark regardless of the expiration of the CBA.  See
Id.

　　　Furthermore, Articles 14 and 15 of the CBA contain express
terms, "for a period of more than 12 months."  Id.  In Tackett,
the Court noted that the existence of a general durational
clause is not inconsistent with the "express or implied" terms
that can promise "that certain benefits continue after the
agreement's expiration. . . .  Such a determination comports
with the 'ordinary principle of contract law' that 'specific
terms and exact terms are given greater weight than general
language.'"  Honeywell Int'l, 233 F. Supp. 3d at 314 (citing
Int'l Union v. Kelsey-Hayes Co., 130 F. Supp. 3d 1111, 1119
(E.D. Mich. 2015) (quoting Tackett, 574 U.S. at 441-443)); see
also Restatement (Second) of Contracts § 203(c) (Am. Law Inst.
1981).  Here, the CBA's Articles 14 and 15 each contain general
durational clauses applicable to the entire provision, but the
Court must give greater weight to the specific express terms
granting up to 12 months of Health and Pension contribution
payments for injured on the job employees.  Undisputed Facts 7-
8.  Thus, at the direction of the Supreme Court, Groden's burden
of showing any "legal duty established and provided by

[19]

applicable labor-management relations law" is met.[4]  Def. Memo.
Supp. Summ. J. 7 n.12, ECF No. 28.

Justice Ginsburg's concurring opinion explaining possible
constraints on employers coupled with the Supreme Court's
opinion in Tackett where she grants greater weight to express
terms that exceed general durational clauses provides
substantial persuasive precedent for this Court to interpret the
provisions obliging Carney to contribute to the funds beyond the
expiration of the CBA.

Citing Tackett, Carney argues that,

under well settled principles of labor law and
contract construction, the presumption is that all
obligations of the employer end under the terms of the
CBA upon its expiration -- particularly when there is
a durational clause, a zipper clause, and a management
rights clause, as in the instant case.

---

[4] Carney points out that the "EXPRESS language of the CBA
limiting the Employer's agreement to make contributions only
"for the duration of the CBA," -- not the actual language of the
CBA in this case -- can be reconciled with the injured worker
provision, which limited any contribution obligation to
"required" contributions, "for not more than" 12 months -- which
obviously means less than 12 months would not violate the CBA."
Def. Supplemental Summ. J. Mem. 5. Carney's attempted
reconciliation is weak because the injured worker provision has
the specific express term of up to 12 months or upon return to
work, one of which is foreclosed due to the termination and
expiration of the agreement.  Undisputed Facts 7-8.  Finally, a
general durational clause with the CBA's expiration is not
express language constituting the "specific terms and exact
terms" that "are given greater weight than general
language" such as the general durational clause. See Restatement
(Second) of Contracts § 203(c) (Am. Law Inst. 1981).  Honeywell
Int'l, 233 F. Supp. 3d at 314.

Def. Supplemental Memo. Supp. Summ. J. 3 n.3.  While this is true, Carney turns a blind eye to the Tackett Court's explicit mention of express terms being given greater weight than general durational terms.

For the proposition that the duty to make contributions expires when the CBA expires, Carney cites to CNH Industrial, NV, v. Reese, and Senn v. United Dominion Industries, Inc., Def. Supplemental Summ. J. Mem. 5; CNH Industrial NV v. Reese, 138 S. Ct. 761, 766 (2018); Senn v. United Dominion Industries, Inc., 951 F.2d 806, 816 (7th Cir. 1992).  Once again, both these cases are distinguishable from the matter at hand because in both CNH and Senn, the Court was determining whether **lifetime** contributions had vested post CBA expiration rather than the express provision here requiring up to 12 months of contributions.  Senn, 951 F.2d 806 (7th Cir. 1992)("Retirees brought class action against employer and employer's successor, alleging entitlement to lifetime welfare benefits."); CNH, 138 S. Ct. 761, 764 (2018)("seeking a declaration that their health care benefits vested for life and an injunction preventing CNH from changing them.").  Groden is not here asserting a vesting of **lifetime** benefits; Groden merely asserts the expressly stated vesting of pension and health fund contributions for up to 12 months.

[21]

### 2. The Health and Pension Contributions vested prior to expiration of the CBA

The parties disagree about how the Court should apply "ordinary principles of contract law" to the Health and Pension provisions found in Article 14 and 15 of the CBA.  Groden argues "the terms of the CBA are unambiguous," that an employer is obligated to pay contributions on behalf of employees injured on the job and unable to work for a period of up to 12 months, and that the right vests once an employee is injured on the job. Pls.' Mem. in Supp. 9.  Carney contends that the "plaintiffs cannot meet their burden to show that [they] entered into any explicit agreement to make contributions to the [Pension] or the Health Plan which survived expiration of the CBA, and [that] as a matter of law, no such intent can be implied."  Def. Summ. J. 3.  Defendant also relies on the Pension and the Health plan's durational clause to argue that the Pension and Health contributions did not vest.  Def. Mem. Summ. J. 4.

"Ordinary principles of contract law" make the case before the Court more nuanced than either party's position.  Honeywell Int'l, Inc., 233 F. Supp. 3d at 310.  "It is well established that welfare benefits such as medical benefits do not automatically vest under ERISA and in most situations the employer can adopt, modify, or terminate them for any reason." Honeywell Int'l, Inc., 233 F. Supp. 3d at 313 (citing Abbruscato

[22]

v. Empire Blue Cross and Blue Shield, 274 F.3d 90, 96-97 (2d
Cir. 2001).   Nevertheless, parties are free to contract around
this presumption, and the benefits will be enforced if "the plan
documents contain specific written language that is reasonably
susceptible to interpretation as a promise to vest the
benefits." Honeywell Int'l, Inc., 233 F. Supp. 3d at 313
(quoting Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55,
60 (2d Cir. 2006) (internal quotations marks omitted); see also
Tackett, 574 U.S. at 439 ("Parties, however, can and do
voluntarily agree to make retiree benefits a subject of
mandatory collective bargaining.")

The Honeywell Int'l court, interpreting Abbruscato,
explained that the Second Circuit did not uphold lifetime
vesting of life insurance coverage because:

> [E]ven though the plan provided 'that 50% of your life
> insurance coverage remains in force for the rest of
> your life, at no cost to you,' because the Benefit
> Administration section of the same plan stated, 'The
> company expects and intends to continue the Plans in
> your benefits program indefinitely, but reserves its
> right to end each of the Plans, if necessary. The
> company also reserves its right to amend each of the
> Plans at any time.'

Honeywell Int'l, 233 F. Supp. 3d at 313 (citing Abbruscato, 274
F.3d at 94) (emphasis in original).

In short, "[t]he Second Circuit expressly limited the
holding to situations where the same document contained both the

[23]

promise and the reservation of rights." <u>Honeywell Int'l</u>, 233 F.

Supp. 3d at 313 (citing <u>Abbruscato</u>, 274 F.3d at 100).

In the documents before this Court the CBA does not contain

a reservation of rights clause.  Just as the plan in <u>Abbruscato</u>

had provisions for retirees to receive lifetime benefits, 274

F.3d at 94, Articles 14 and 15 of the CBA contain clauses that

provide on-the-job injured employees coverage for up to 12

months.  Undisputed Facts 7-8.  The CBA's Articles 14 and 15,

however, only contain identical duration clauses: "Commencing

with the first day of May 2016, and for the duration of the

current collective bargaining agreement between Local Union 25

and the Employer . . .".  <u>Id.</u> at 7.

> The Second Circuit has held that a CBA containing
> "lifetime" language, but no reservation of rights
> clause is enforceable as a unilateral contract."  <u>See</u>
> <u>Devlin</u>, 274 F.3d at 84 ("Where the offeror did not
> explicitly reserve the power to revoke, such an offer
> cannot be revoked once the offeree has begun to
> perform."); <u>compare</u> <u>Devlin</u>, 274 F.3d at 84; <u>with</u>
> <u>Cherry</u> v. <u>Auburn</u> <u>Gear, Inc.</u>, 441 F.3d 476, 484 (7th
> Cir. 2006) (finding that limiting benefits "for the
> period of this agreement" is a reservation of rights
> clause).

<u>Honeywell Int'l</u>, 233 F. Supp. 3d at 313-314.

Just as <u>Devlin</u> spells out, Carney was not correct in

revoking their offer because the intended offerees, the

employees, had already triggered the provision -- and

effectively "begun to perform" -- having been injured on the job.  Id.; Undisputed Facts 7-8.

The only language found expressly to mention the Defendant's obligation to continue contributions post CBA expiration is found in Article II Section 2.08: Basis of Employer Participation in Fund. "The termination of an Employer's Participation in this Plan, whether by actions of the Trustees or otherwise, shall not relieve the Employer of any outstanding obligations to the Fund at the effective date of such termination." Subsection (b) of the same Article goes on to explain when contributions are no longer required:

> A contributing Employer's participation in this Fund with respect to a bargaining unit will automatically cease when the Employer no longer has a Collective Bargaining Agreement requiring contributions to the Fund or with that bargaining unit unless continuing contributions are due as a result of a legal duty established and provided by applicable labor management relations law, including 29 USC §158(a)(5).

Undisputed Facts, (Article II Section 2.08: Basis of Employer Participation in Fund) (emphasis added).

Carney argues that Abbruscato is inapplicable to the current case because Abbruscato involved "a claim under an employer's welfare benefit plan, and construction of the Plan Documents under Section 502(a)(1)B) of ERISA" whereas the present case is "an action under a Collective Bargaining Agreement (CBA) purportedly under Section 515 of ERISA by the

New England Teamster's Pension Fund and Teamster's Local 25's
Health Fund to collect contributions which were not due at the
time the parties' Collective Bargaining Agreement expired."
Def. Supplemental Summ. J. Mem. 1.  The distinction Carney draws
is of little moment.  This Court properly relies on Abbruscato
as precedent because, while the documents may be labeled
differently, it is common practice in ERISA contract
interpretation to use contract interpretation principles that
span a variety of agreements as is the case here.  For example,
the Abbruscato court cited a CBA interpretation in Joyce v.
Curtiss-Wright Corp. even though, as the Defendants point out,
Abbruscato is interpreting an employer's welfare benefit plan
and plan documents instead of a CBA as is the case here.
Abbruscato v. Empire Blue Cross & Blue Shield, 274 F.3d 90, 99
(2d Cir. 2001) (citing Joyce v. Curtiss-Wright Corp., 171 F.3d
130, 136 (2d Cir. 1999).  Whether contributions ought be
collected comes down to the contract interpretation analysis of
the CBA provisions discussed above.

### D.   Criminal Penalties under the Labor Management Relations Act (LMRA)

Carney's argument that they will be subject to criminal
penalties for violations of 29 U.S.C. s 186(c) even if they were
to contribute post contract expiration **largely** misses the
intention of the statute that "was obviously targeted at the

[26]

elimination of the corruption of the collective bargaining process." Cement Masons Health & Welfare Tr. Fund for N. California v. Kirkwood-Bly, Inc., 520 F. Supp. 942, 945 (N.D. Cal. 1981), aff'd sub nom. Cement Masons Health & Welfare Tr. Fund for N. California v. Kirkwood-Bly, Inc., 692 F.2d 641 (9th Cir. 1982). Carney points out that the Labor Management Relations Act prohibits -- with criminal penalties -- the making of contributions to a union or its trust fund in the absence of a written agreement. See Def. Supplemental Summ. J. Mem. 12. Section 186(c)

> makes illegal any payment by an employer to the representative of his employees except, inter alia, when paid to a trust fund meeting specified requirements, one of which is that "the detailed basis on which such payments are to be made is specified in a written agreement with the employer.

Kirkwood-Bly, 520 F. Supp. at 945; 29 U.S.C. § 186(c). Carney's argument holds no water in the face of a written, vested obligation that arose while the CBA was alive. There is here not a scintilla of evidence of corruption of the collective bargaining process.

## IV.  CONCLUSION

Notwithstanding the expiration of the CBA, when Mr. White and Mr. Smith were injured on the job, they gained a specific vested interest in up to 12 months of contributions to the funds because they could not return to work after being terminated.

Following the analysis in <u>Kelly</u> v. <u>Honeywell Int'l, Inc</u>, 233 F. Supp. 3d 302 (D. Conn. 2017) (Bryant, J.), judgment shall enter for the Plaintiffs.   The parties shall have 30 days to prepare a form of judgment.

**SO ORDERED.**

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[5]

---

[5] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.   Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.

[28]